Good morning. My name is John Scott. I'm the attorney for the appellant and the plaintiff, Patrick Vinatieri. This case presents, in my view, essentially four issues to, I think, kind of merge. And I apologize for the fact I didn't really brief this issue on that. One is, what's the difference between a conspiracy and joint action? Because some cases talk about joint action, and actually a number of cases, and some of the leading cases talk about joint action without really talking about or distinguishing it between a conspiracy or joint action. And I regrettably, in preparing for today's argument, I realized I didn't really brief that issue. So I apologize for that. To the extent there is a difference, there may be a difference. It seems to me the conspiracy requires evidence of an agreement or meeting of the minds that is typically proven through circumstantial evidence, since if you had an admission, there would be no reason to litigate further. You're litigating because, assuming there is a constitutional violation, there's a dispute on whether there's a meeting of the minds. I can tell you, in my experience, both at the appellate level and at the trial level, I have pursued conspiracy claims, and I've gotten verdicts in conspiracy claims. They may sound difficult to prove, but depending on the evidence, when it's preponderance of the evidence, this isn't a criminal case, I don't believe conspiracies are not necessarily that difficult to prove in a civil case, assuming you have evidence from which an agreement can be inferred. But having said that, it seems to me this case, once we get beyond that, and I submit that if you look at the other reported decisions, there is more evidence in this case, at least more that's alleged. Most of the cases coming up on appeal are on summary judgment. This is one of the rare cases that's come up on a motion to dismiss, although I would note one of the cases that we did brief did come up on a motion to dismiss, that was Elliott Park v. Mangalona, and that's at pages 40 to 42 of my opening brief. And you may recall that that was the case, I believe it was Guam, it was one of the islands in the Pacific, and the issue had to do with a Micronesian who had had an accident, an auto accident, seriously injured a Korean, and the Micronesian was not arrested or prosecuted, although there was very clear evidence, overwhelming evidence, that drunk driving had occurred. And that case came up on the issue of equal protection on the basis of race, and obviously race is not an issue in this case, and it's obviously very easy to apply the Equal Protection Clause to cases where there's race. However, there is another line of cases under the Equal Protection Clause that deal with the issue of malice, and we've cited a number of them, and there are a number of courts who have done the equal protection analysis and looked at the issues of malice as potentially trumping the discretionary act of a police officer. In other words, obviously police, a lot of what they do are discretionary functions, and they may or may not decide to arrest someone, and there is a lot of discretion in police activities. However, that generalization does not mean, at least there's a number of courts that indicate it, one exception is if there is malice. And in this case, we've alleged malice. If you draw inferences in plaintiff's favor, malice is what is driving this case. What is the, would you point to your most helpful allegations in the most recent complaint that would demonstrate factually a plausible claim for, for example, retaliation, First Amendment retaliation? Well, Your Honor, I, give me a second. I'll find where it is in the complaint, but I know there's a history of ongoing litigation, contentious litigation between the Valergas and the Vinnie Cherries. In fact, the district court acknowledged and recognized that there was a history of contentious litigation, and that history of contentious litigation is set forth in the complaint at paragraphs 19 through paragraphs 27. And also, I mean notably, this happened, and if we, let me find it in the complaint. When, if you look at paragraphs, paragraph 37 of the complaint, at the time my client was being assaulted by his neighbor, Michael Valerga, Michael Valerga complained, yelled at him, proclaimed to him, appeal this. And this assault had occurred within a couple weeks of when Mr. Vinnie Cherrie filed a notice of appeal in one of the cases that was in litigation in the local state court. And that was a case where Mr. Vinnie Cherrie had brought a lawsuit regarding, among other things, leaking sewage, leaking to his property from the Valerga's property, which also happens to be a matter of public concern. It's not only, although I think it would be enough under the First Amendment, to just, the First Amendment, your right of access to the courts, but this was not just a lawsuit that was a private matter. The allegations of sewage and toxic waste getting into the groundwater is certainly a matter of public concern. Mr. Scott, specifically with regard to the First Amendment retaliation claim, I think you allege actions that were intended to chill the speech of your client. Are you relying in the Second Amendment complaint on the assault and related actions on August 30th? Or is it a broader set of facts you're relying upon? I couldn't tell from the complaint. The broader set of facts is only to prove motive and intent. The First Amendment claim is based on August 30th. Yes. All claims are based on August 30th. The other allegations are there to show motive and intent and to support the allegation that this was done for a retaliatory purpose. The only act we're seeking damages for is the conduct of August 30th.  But in addition to that, I would have to admit that a lot of the other things Mr. Vinicieri is complaining about would be protected by the litigation privilege, among other things. I don't think the history of events leading up to August 30th would be actionable for a number of reasons, but they do provide context and, in my view, go to show that the motive and intent behind the assault is related to a history of contentious litigation. I would note that as I was looking at the cases last night, it's interesting that a number of the cases have to do with the police. A number of the reported decisions, I mean, obviously it's a police case, and I was looking for police cases to cite, but the idea that somehow an allegation that a private party could not, would not, try to form some kind of alliance with a police officer or officers for a private purpose is not a far-fetched idea. I mean, the case law is replete with decisions, and a number I've cited where, whether it's for any number of reasons, where private parties have enlisted police officers to do their bidding for them. So I don't, the district courts seem to believe this somehow is hard to believe or not plausible. My life experience as a lawyer and just reading the cases, I mean, these things happen. Counsel, you're just about out of time, but Judge Tunheim, I have a question. I just have one question. Why should we allow you to supplement the record for the five additional facts that you want to allege in a new amended complaint? Because if the case had not been dismissed, I would have been allowed to do discovery, and if I'd been allowed to do discovery, which I ultimately did in the state action, I would have found out this information, which in my mind gets back to why are motions to dismiss rarely, if ever, granted? I mean, they are granted, but very rarely. Because I think most courts recognize, whether it's district courts or appellate courts, that a party should at least be entitled, given an opportunity to conduct discovery, no matter how far-fetched a court may think the allegations are. It's amazing how many cases at first blush appear to be far-fetched, and after discovery, parties are able to proceed at the summary judgment level and at trial and prevail. Thank you, Counsel. Good morning. Pleased to court. My name is Mark Jones. I represent Deputy Aaron Mosley. Interestingly enough, I would have to say I agree with almost everything that Mr. Scott just said. The problem is he never really addressed Justice Graber's question, I don't think. The issue here is, has he alleged enough facts to provide a plausible cause of action, in any of the four causes of action, that are alleged against Aaron Mosley? Well, maybe this is just a difficulty that I have with the Supreme Court's cases in this area, but plausibility always seems to me to be in the eye of the beholder. And there certainly are the ultimate facts that there was a conspiracy alleged. So the question is whether there's enough supporting material to allow an inference that that might be the case. And even without looking at the material that's sought to be supplemented, there certainly is. There's timing. There's what people said. There's a relationship between the defendants personally. Why isn't that enough to survive a motion for dismissal, as distinct from maybe later on a motion for summary judgment? I would note, to answer your question, and this kind of goes to Justice Tenheim's question about the supplementation of the record, because there was an underlying state court action after this case was dismissed, there was a discovery in that case, and the appellant has been able to take the depositions of all the players, my client, the Valergas. And to the extent there's additional information, it's interesting to me that that's all the information that they have. They've completed all the discovery that they're going to complete, as far as that goes. And the additional facts they've come up with don't add anything to the case. I think the answer to your question, and I agree, it is kind of a judgment call as to whether or not there's enough for a conspiracy. But in the case law, it's clear that conclusory allegations don't get that presumption of truth. You have to have some factual allegations to support this. When Mr. Scott says that all the claims are based on the August 30th assault and the other information is background, well, the background information, if you look at every single one of those events where they talk about some contact between my client and the Vinatieri's and or the Valerga's, they're all conclusory, and none of them would take whatever they're claiming against, it doesn't take it out of just the normal discretionary acts of a law enforcement officer. If you look at these traffic stops outside of the Vinatieri's house, for example, there's no allegation that those folks weren't drinking. The allegation is, well, they stopped them and they let them go. Similarly, and more importantly, and I think more telling, is the situation where they said, well, he was in court a couple of times and Aaron Mosley aligned himself with the Valerga's against the Vinatieri's. That's a conclusory allegation. We don't know, was he a witness? What did he do? And the thing that's telling about that is they were there. The Vinatieri's were there. So they have those facts, and the fact they haven't alleged anything beyond some conclusion that they allied themselves against us, that doesn't tell us anything. If we consider the new factual allegations, which the plaintiff is trying to make in the case, how can it not be a problem in what Mosley did the night of August 30th? It seems most of what he did was a violation of the police procedures that were in place at the time. I'm glad you asked me that because that's key. And Mr. Scott indicated that it's this August 30th night that all these claims arise out of. The allegation in the complaint, the only thing that's not a conclusory allegation is that he showed up. He responded to a call from Sergeant Wong. There's a giant brouhaha out there. There's a big fight. The fire trucks are there. The ambulance is there. A number of officers respond. So he shows up. He's a backup officer. There's no allegation in the complaint nor in the so-called new evidence that Mosley was obligated or in charge of or responsible for doing anything at the scene. He says, well, photographs weren't taken. Okay, well, where's the allegation? Because he knows now because he's taken depositions. Mosley had nothing to do with the investigation. He had nothing to do with the arrest. And there's no allegation that Mosley was supposed to take photographs and he didn't. Mosley was supposed to do something. The point of it isn't what he did or didn't do afterwards. The point of the allegations, at least, is that Mosley was part of the decision, if you will, to beat him up in the first place. I mean, afterwards is interesting, but that's not really the point, I don't think, of the complaint. But what is alleged as a fact, this is the question that you asked Mr. Scott. He just cited a whole bunch of paragraphs in his complaint. Where are the allegations that establish that whatever Mosley did, that that ultimately turned out to be some sort of a meeting of the minds where the Valergas could beat up their neighbor and know that Mosley, a deputy sheriff, would be able to, in some way, preclude any kind of arrest, preclude any kind of prosecution. Or just encourage them to do it in the first place. That would do, wouldn't it? But that's not what's alleged. What's alleged is that a meeting of the minds that they could do it and not get arrested, not get prosecuted, that's it. But, again, the allegations wouldn't suggest that he was encouraging them to assault their neighbor. I mean, there's nothing in this complaint that suggests that. Well, I read it, actually, a little differently, I think. To me, it seemed that the allegation is that there was this meeting of the minds, if you will, or agreement, so that there was an alignment and that created the environment in what was already a pretty hostile Hatfields and McCoy kind of neighborhood relationship. I have Hatfields and McCoy written down here, actually. It seems to fit the fact pattern so that that created, you know, a kind of environment where they could retaliate and not be held accountable. That's how I read the complaint. Although this dispute's been going on for decades. Mosley's a very new entry into this whole scenario. Well, that doesn't matter, does it? No, that doesn't matter. I'm just saying the way the chronology is. But to me, that chronology assists the plaintiffs because, to me, that makes it more likely that this was sort of a powder keg. It was an explosive environment because it's been going on for decades, again, looking at, you know, if I put myself in the plaintiff's shoes. But where is it alleged? Where are the facts that are alleged that would take Aaron Mosley outside of the duties and responsibilities of any officer doing what he does? Not one single thing that's in there. You know, it's like the red herring on the new evidence about the investigators didn't get the videotape. Well, in the same sentence, he says that the Valergas withheld that from the officers. So, again, it's a situation where we now know all the facts because of the discovery that's been done. And there's nothing in these allegations that would do anything other than, you know, raise a possibility that this might have occurred. But I don't think that's good enough under the case law. Counsel, you're using your co-counsel's time. I thought I might let him two minutes. Okay. And I did, just barely. Thank you. Thank you. Good morning. May it please the Court. My name is Martin Seeger. I represent Arnold Valerga in this matter. And the problem with this case is there's no connection between the so-called meetings of the mind between Arnold Valerga, the father, and the alleged criminal conduct of an adult son and daughter-in-law. It might make more sense to have a meeting of minds between the assaulter and the assaultee, but not between a father and an adult son. There's no connection between the two. Paragraph 39 of the complaint admits that Arnold Valerga wasn't there, wasn't involved in the allegation, wasn't involved in encouraging it, or the altercation had nothing to do with it. He came along later. And so what if they were friends? That's the best you can make out of these allegations. The state law claims against Mike and Eileen have been dismissed, they've been abandoned by the appellant, and they've been resolved. The Second Amendment complaint does not show the connection between Arnold, the father, and the criminal conduct of a third party, albeit a son and daughter-in-law but still a third party, an adult. If the claim in this case is just for damages from the August 30th event, that's easy. Arnold wasn't there. He had nothing to do with it. He didn't encourage it. And the best you can say is that perhaps Michael Valerga thought he could get away with it because his father was friends with a police officer, but those allegations aren't in the complaint. They're not in the Second Amendment complaint. Is there a heightened pleading standard for claims for conspiracy under Section 1983? I believe there are when there is a conspiracy with a police officer. And there's no showing here that Arnold Valerga acted under any color of state law. He was presumably home in bed when this happened. At least he wasn't there, according to the allegations. And so how is he responsible for the criminal conduct of a third party? That's where this case falls apart, at least as to Arnold Valerga.  Thank you. You may have a minute for rebuttal. Just two points as to Arnold Valerga. The litigation that was going on for years primarily had to do with Arnold Valerga, who owned the property next door. His son Michael happened to be renting or living in a house on the property that was owned by Arnold Valerga. The litigation primarily had to do with Arnold Valerga, either as a plaintiff or defendant. Also, one thing that was discovered was that Arnold Valerga was at the scene within minutes after the beating and actually met with and spoke with deputies at the scene. He was there within minutes. And he talked with the officers at the scene. Thank you. We appreciate the arguments of all counsel. The case just argued is submitted.
judges: Tunheim, Graber, Christen